J-A10041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WAYNE E. BRANT JR. | : | |
| | : | |
| Appellant | : | No. 1240 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 24, 2019
In the Court of Common Pleas of Fulton County
Criminal Division at No(s): CP-29-CR-0000236-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WAYNE EUGENE BRANT, JR. | : | |
| | : | |
| Appellant | : | No. 1241 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 24, 2019
In the Court of Common Pleas of Fulton County
Criminal Division at No(s): CP-29-CR-0000251-2018

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED AUGUST 30, 2022**

Appellant, Wayne Eugene Brant Jr., appeals *nunc pro tunc* from the

judgment of sentence entered in the Fulton County Court of Common Pleas,

following his jury trial convictions for conspiracy, theft by unlawful taking—

movable property, receiving stolen property, persons not to possess firearms,

and firearms not to be carried without a license.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with various offenses at two separate dockets in relation to a series of reported thefts that occurred in McConnellsburg, Pennsylvania on the morning of September 27, 2018.  On December 17, 2018, the Commonwealth filed a notice of joinder.  A jury trial for both dockets commenced on August 8, 2019.

Tyler Elmes, a McConnellsburg resident, testified that around 6:00 a.m. on September 27th, he discovered his credit cards and 9mm Smith and Wesson pistol missing from his truck.  L.D. Chip Keebaugh, another local resident, testified that around 8:00 a.m. on the same day, he discovered that his 9mm Ruger pistol, his TNW 9mm rifle, credit cards, laptops, a black tactical bag and other various items were missing from his car.  Jeremy Woolford testified that around 6:15 a.m. the same day, he saw a man wearing a bright colored shirt standing very close to his car who fled when he saw Mr. Woolford approaching. Upon checking his car, Mr. Woolford realized that his wallet was missing. Naomi Westberry testified that on the same morning at around 5:30 a.m., she saw a man wearing a dark hoodie rummaging inside her car.  The individual fled on foot as soon as Ms. Westberry approached the vehicle; the individual appeared to be carrying a black bag.

---

[1] 18 Pa.C.S.A. §§ 903, 3921(a), 3925(a), 6105(a)(1), and 6106(a)(1), respectively.

State Trooper Salvatore Scavone testified that at approximately 6:00 a.m. on September 27, 2018, he responded to a call from Ms. Westberry regarding a vehicle theft. Ms. Westberry relayed that the individual was a white male wearing a dark blue shirt, and her husband reported seeing an individual in a bright orange shirt in the area. While canvasing the neighborhood, Trooper Scavone observed Appellant and Brandon Horton pull into a laundromat in a Jeep. Appellant was wearing a bright orange shirt and Mr. Horton was in a dark hoodie, matching the physical descriptions provided by Ms. Westberry and her husband. Upon approaching the vehicle, Trooper Scavone observed a loaded Smith and Wesson gun magazine on the passenger side floor, where Appellant had been sitting.

Mr. Horton allowed Trooper Scavone to search the vehicle. From the search, police recovered the stolen Smith and Wesson gun from the glovebox in front of where Appellant had been sitting. Additionally, police found another Smith and Wesson pistol magazine as well as Ruger pistol rounds in the Jeep. Trooper Scavone also reported seeing a blue long-sleeved shirt and yellow shirt in the backseat. Upon searching Appellant, police found credit cards belonging to various victims in Appellant's pockets. Appellant claimed he had not stolen these items and had found all of them along the side of the road. After he was arrested, Appellant stated that Mr. Horton gave him the credit cards and the gun. Appellant denied participating in any theft.

State Trooper Jeffrey Hahn testified that he located other stolen items

nearby alongside the road, including the Ruger pistol and the TNW rifle in a black tactical bag lying abandoned on the same street Mr. Woolford reported seeing an individual flee from his car. He testified further that a total of nine separate incidents of theft from motor vehicles were reported on the morning of September 27th in the area immediately surrounding the location where the black tactical bag was found.

Appellant testified that he agreed to accompany Mr. Horton to McConnellsburg to visit Mr. Horton's girlfriend and they arrived in McConnellsburg sometime after 3:00 a.m. on September 27, 2018. After being unable to locate Mr. Horton's girlfriend, the pair realized that there was not enough gas in the car to return home and neither party had money to pay for gas. At approximately 4:00 a.m., Mr. Horton left Appellant in the car claiming that "he would figure something out." After waiting for 20 minutes, Appellant walked to Sheetz to attempt to panhandle money. Appellant acquired $10.00 from a woman at Sheetz and got lost trying to find his way back to the Jeep. At approximately 5:30 a.m. Appellant returned to the car and Mr. Horton returned 10 minutes later. Mr. Horton did not tell Appellant where he went but informed Appellant that he acquired money for gas. Mr. Horton then handed Appellant several credit cards and asked Appellant to check if they were any good. Immediately after, Mr. Horton pulled into a laundromat and Trooper Scavone approached them. Appellant stated that he did not know that the credit cards were stolen and was unaware of the other

- 4 -

stolen items found in the car.

State Trooper Cody Hollibaugh testified that the Sheetz that Appellant claimed to be at had approximately eight or more security cameras covering all angles of the inside and outside of the store. Trooper Hollibough testified that he carefully reviewed all footage from 1:00 a.m. to 6:00 a.m. on September 27th and Appellant did not appear in any of the footage from inside or outside the store. Additionally, when he was arrested, Appellant did not have $10.00 on his person.

On August 9, 2019, the jury found Appellant guilty of multiple counts of conspiracy, theft by unlawful taking, receiving stolen property, persons not to possess firearms, and carrying firearms without a license. On September 24, 2019, the court sentenced Appellant to an aggregate sentence of 216 to 432 months' imprisonment. Appellant timely filed a post-sentence motion on October 4, 2019, which was denied by operation of law on February 10, 2020.

Following reinstatement of Appellant's direct appeal rights, Appellant timely filed a notice of appeal *nunc pro tunc* at each underlying docket number on September 23, 2021. On October 5, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied on November 4, 2021. This Court consolidated the appeals *sua sponte* on November 4, 2021.

Appellant presents the following 11 issues for our review:

> 1) Whether the trial court erred in finding sufficient evidence
> to convict Appellant of Count 3, 18 Pa.C.S.A. § 903

conspiracy— theft by unlawful taking—movable property when the evidence fails to establish that Appellant agreed with another to exercise control over a Smith and Wesson 9mm pistol found in co-defendant's vehicle?

2) Whether the trial court erred in finding sufficient evidence to convict Appellant of Count 1, 18 Pa.C.S.A. § 3921(a) theft by unlawful taking—movable property when the evidence fails to establish that Appellant exercised control over a black Ruger LC9 9mm pistol, TNW Firearms 9mm rifle or any of the property belonging to L.D. Chip Keebaugh found in a bag at 630 Lincoln Way East?

3) Whether the trial court erred in finding sufficient evidence to convict Appellant of Count 1, 18 Pa.C.S.A. § 3921(a) theft by unlawful taking—movable property when the evidence fails to establish that Appellant exercised control over a Smith and Wesson 9mm pistol found in co-defendant's vehicle and that the evidence failed to establish that if the Appellant did exercise control over the firearm that it was with the intent to deprive the victim of his property?

4) Whether the trial court erred in finding sufficient evidence to convict Appellant of Count 2, 18 Pa.C.S.A. § 3925(a) receiving stolen property when the evidence fails to establish that Appellant was in possession of a black Ruger LC9 9mm pistol, TNW Firearms 9mm rifle or any of the property belonging to L.D. Chip Keebaugh found in a bag at 630 Lincoln Way East?

5) Whether the trial court erred in finding sufficient evidence to convict Appellant of Count 2, 18 Pa.C.S.A. § 3925(a) receiving stolen property when the evidence fails to establish that Appellant was in possession of the Smith and Wesson 9mm pistol found in co-defendant's vehicle?

6) Whether the trial court erred in finding sufficient evidence to convict Appellant of Count 3, 18 Pa.C.S.A. § 6105(a)(1) possession of firearm prohibited when the evidence fails to establish that Appellant possessed, used or exercised control over a Smith and Wesson 9mm pistol found in co-defendant's vehicle?

7) Whether the trial court erred in finding sufficient evidence

- 6 -

to convict Appellant of Count 4, 18 Pa.C.S.A. § 6105(a)(1) possession of firearm prohibited when the evidence fails to establish that Appellant possessed, used or exercised control over a black Ruger LC9 9mm pistol found in a bag at 630 Lincoln Way East?

8) Whether the trial court erred in finding sufficient evidence to convict Appellant of Count 5, 18 Pa.C.S.A. § 6105(a)(1) possession of firearm prohibited when the evidence fails to establish that Appellant possessed, used or exercised control over TNW Firearms 9mm rifle found in a bag at 630 Lincoln Way East?

9) Whether the trial court erred in finding sufficient evidence to convict Appellant of Count 6, 18 Pa.C.S.A. § 6106(a)(1) firearms not to be carried without a license when the evidence fails to establish that Appellant carried a firearm in a vehicle or concealed on or about his person?

10) Whether the trial court erred in finding sufficient evidence to convict Appellant of Count 7, 18 Pa.C.S.A. § 6106(a)(1) firearms not to be carried without a license when the evidence fails to establish that Appellant carried a firearm in a vehicle or concealed on or about his person?

11) Whether the trial court's imposition of consecutive, rather than concurrent, sentences is unduly harsh, considering the nature of the crimes and the length of imprisonment?

(Appellant's Brief at 4-7) (reordered for purpose of disposition).

In his first ten issues combined, Appellant challenges the sufficiency of the evidence to sustain his convictions. Appellant argues the Commonwealth failed to present evidence that Appellant entered into an agreement with Mr. Horton to commit any crimes. Appellant asserts there was no evidence that Appellant participated in planning the thefts or even had knowledge the thefts would occur. Additionally, Appellant contends there was no direct evidence

linking Appellant to the discarded black tactical bag containing stolen items, including the Ruger pistol and TNW rifle. Appellant emphasizes that Ms. Westberry testified that an individual matching Mr. Horton's description was rummaging in her car and carrying the black bag which was later recovered. Appellant maintains there is no evidence in the record establishing that at any time Appellant possessed the black bag and its contents, or even knew of its existence.

Further, Appellant contends that the mere fact that the Smith and Wesson gun was found in the glovebox in front of Appellant is not enough to establish that he possessed it. Appellant claims police recovered the firearm in Mr. Horton's car and there is no evidence that Appellant removed the item from the victim's vehicle. Additionally, Appellant maintains the Commonwealth presented no evidence that Appellant exercised control over any of the stolen guns. Appellant concludes the Commonwealth presented insufficient evidence to sustain his convictions, and this Court should reverse his convictions and vacate the judgment of sentence. We disagree.

In reviewing a challenge to the sufficiency of the evidence:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be

- 8 -

resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code defines the offense of criminal conspiracy as follows:

**§ 903.  Criminal conspiracy**

**(a)   Definition of conspiracy.—**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1)      agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2)      agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

"To sustain a conviction for criminal conspiracy, the Commonwealth

- 9 -

must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Melvin*, 103 A.3d 1, 42 (Pa.Super. 2014) (citation omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Id.* at 42-43. "Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." *Commonwealth v. Barnes*, 871 A.2d 812, 820 (Pa.Super. 2005).

The Crimes Code defines theft by unlawful taking as follows:

**§ 3921. Theft by unlawful taking or disposition**

**(a) Movable property.—**A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him

thereof.

18 Pa.C.S.A. § 3921(a). "Movable property" is:

Property the location of which can be changed, including things growing on, affixed to, or found in land, and documents although the rights represented thereby have no physical location. "Immovable property" is all other property.

18 Pa.C.S.A. § 3901. "Deprivation" occurs if a person: (1) "withhold[s] property of another permanently;" or (2) "dispose[s] of the property so as to make it unlikely that the owner will recover it." *Id.*

The Crimes Code defines receiving stolen property as follows:

### § 3925. Receiving stolen property

**(a) Offense defined.**—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with the intent to restore it to the owner.

18 Pa.C.S.A. § 3925(a).

Based upon the statute, this Court has identified the following elements for receiving stolen property: "(1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and 3) the intent to deprive permanently." *Commonwealth v. Robinson*, 128 A.3d 261, 265 (Pa.Super. 2015) (*en banc*) (internal citations omitted). As to whether a person knows an item is stolen, "[t]he mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either

- 11 -

circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen." ***Id.*** at 268 (quoting ***Commonwealth v. Foreman***, 797 A.2d 1005, 1012 (Pa.Super. 2002)).

> Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime.

***Robinson, supra*** at 268. ***See also Commonwealth v. Gomez***, 224 A.3d 1095 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 236 A.3d 1053 (2020).

The Uniform Firearms Act provides, in relevant part, as follows:

**§ 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a)      Offense defined.—**

(1)   A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

**§ 6106.  Firearms not to be carried without a license**

**(a)      Offense defined.—**

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a

felony of the third degree.

18 Pa.C.S.A. §§ 6105(a)(1); 6106(a)(1).

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession…." ***Commonwealth v. Jones***, 874 A.2d 108, 121 (Pa.Super. 2005).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as the "power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> ***Commonwealth v. Brown***, 48 A.3d 426, 430 (Pa.Super. 2012) (quotation omitted). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." ***Id.*** (citation omitted).

***Commonwealth v. Roberts***, 133 A.3d 759, 767-68 (Pa.Super. 2016), *appeal denied*, 636 Pa. 675, 145 A.3d 725 (2016).

Instantly, the trial court determined there was sufficient circumstantial evidence to sustain the jury's verdict of criminal conspiracy. Appellant testified that he and Mr. Horton had agreed to drive to McConnellsburg together in the early morning of September 27, 2018. They were together for a prolonged period in the same area and time frame when the thefts occurred.

Additionally, multiple witnesses testified to seeing men matching the physical descriptions of Appellant and Mr. Horton stealing items from vehicles in the nearby area. Appellant and Mr. Horton were together when police stopped them and found stolen goods in their possession. When initially questioned, Appellant told police that he found the stolen items along the side of the road. Additionally, the Commonwealth presented evidence that Appellant did not appear in the surveillance footage at the local Sheetz where he claimed to have been when Mr. Horton committed the thefts without his knowledge.

Taken together in the light most favorable to the Commonwealth as the verdict winner, these facts were sufficient for the jury to find that Appellant and Mr. Horton agreed and planned to commit vehicle theft in the McConnellsburg area and stole items from multiple cars in furtherance of their plan. *See Sebolka, supra*; *Melvin, supra*. Accordingly, sufficient evidence supported Appellant's conspiracy conviction. *See id.*; 18 Pa.C.S.A. 903.

Regarding Appellant's theft by unlawful taking and receiving stolen property convictions for the Smith and Wesson gun found in the glovebox, the court explained:

> Tyler Elmes testified his gun, wallet, and credit cards were stolen early in the morning on September 27, 2018. When the police approached [Appellant], they found a gun in the glove box in front of where [Appellant] was sitting. Credit cards were found in [Appellant's] pockets. Tyler Elmes positively identified the gun and two of the cards as ones stolen from him.
>
> [Appellant] testified he had no idea the items were stolen. He initially claimed he had found these items on the

roadside. He later claimed Horton gave him the items after being gone for several hours. [...] A magazine for the [Smith and Wesson] pistol was on the floor of the car underneath [Appellant]. Despite claiming he was at the local Sheetz for some time, [Appellant] did not appear on video surveillance of the area. [Appellant] has prior convictions for *crimen falsi*. The jury was free to disbelieve [Appellant's] version of events and had ample reason to do so.

The gun and the credit cards were movable property belonging to Tyler Elmes. [Appellant] had the credit cards in his pocket. He either took those cards himself or Horton, his co-conspirator, gave them to him. [Appellant] concealed how he acquired these cards, evidencing consciousness of guilt.

The [Smith and Wesson] pistol was in the glove box in front of [Appellant]. The magazine of the pistol was beneath [Appellant's] feet. Either [Appellant] or his co-conspirator Horton put the pistol there. [Appellant] and Horton were driving away with the pistol and credit cards, clearly evidencing a lack of intent to return them.

(Trial Court Opinion, filed May 19, 2020, at 11-12) (internal citations omitted).

The record supports the court's findings. Viewed in the light most favorable to the Commonwealth as the verdict winner, there was sufficient evidence for the jury to find that Appellant or Mr. Horton took items from Mr. Elmes' vehicle with the intent to deprive him of it. **See** 18 Pa.C.S.A. § 3901; **Sebolka, supra**. There was also sufficient evidence for the jury to conclude that Appellant knew the items in the car and the credit cards in his pocket were stolen. **See Robinson, supra.** Additionally, regardless of whether it was Appellant or Mr. Horton that stole Mr. Elmes' property, there was sufficient evidence for the jury to find Appellant guilty of both theft offenses where

Appellant was part of the conspiracy. *See Barnes, supra*.

Regarding the theft convictions related to the stolen tactical bag containing Mr. Keebaugh's Ruger pistol and TNW rifle, the court determined there was sufficient circumstantial evidence to sustain the jury's verdict. The record supports the court's determination. Mr. Keebaugh testified that a black tactical bag with a Ruger pistol and TNW rifle was taken from his car in the early morning of September 27, 2018. Appellant testified that he and Mr. Horton were in the same area during the same time period. Ms. Westberry testified to seeing a man matching Mr. Horton's description, wearing a dark hoodie, carrying a black bag while stealing from her van at approximately the same time. Her husband also reported seeing a man in a bright orange shirt in the area. Police confirmed that Appellant was wearing an orange shirt and Mr. Horton was wearing a dark hoodie.

Additionally, officers located the black bag in some bushes on the same street Mr. Woolford reported seeing an individual flee from his car. Further, police found ammunition for the Ruger pistol in the Jeep Appellant was in prior to his arrest. Taken together, the evidence was sufficient for the jury to conclude that Appellant or Mr. Horton took Mr. Keebaugh's black tactical bag with the intent to deprive him of it. *See* 18 Pa.C.S.A. § 3901; *Sebolka, supra*. Given Appellant's status as a co-conspirator, the evidence was sufficient to convict Appellant of the theft charges for the guns and property found in the black bag. *See Barnes, supra*.

- 16 -

Regarding Appellant's firearms convictions, our review of the record supports the court's determination that there was sufficient evidence to sustain the verdicts. It is uncontroverted that Appellant has a prior conviction which prohibits him from possessing a firearm and Appellant did not have a valid license to carry a firearm on the date in question. Mr. Elmes' Smith and Wesson pistol was found in the glovebox in front of Appellant and the accompanying magazine was lying beneath Appellant's feet. Additionally, credit cards belonging to Mr. Elmes which were stolen at the same time as the gun were found on Appellant's person. Based on the totality of the circumstances, there was sufficient evidence for the jury to conclude that Appellant exercised constructive possession over the Smith and Wesson pistol. *See Roberts, supra*.

Similarly, although the Ruger pistol and TNW rifle were not found in the Jeep Appellant was in when he was arrested, police found ammunition for the Ruger pistol in the Jeep. Taken together with all the circumstantial evidence that Appellant participated in a series of thefts in the immediate area, there was sufficient evidence for the jury to conclude that Appellant stole the guns in the bag and hid them in the bushes where they were later found. *See id.* Accordingly, we find no error in the court's determination that there was sufficient evidence for the jury to conclude that Appellant constructively possessed the firearms to sustain Appellant's convictions for the firearms offenses. *See Sebolka, supra*.

In his eleventh issue, Appellant argues his aggregate sentence of 216 to 413 months' incarceration is excessive and unduly harsh considering the gravity of the offenses and Appellant's age. Appellant asserts that the offenses he was found guilty of were nonviolent and the impact on the victims was not so great as to demand such a harsh sentence. Appellant contends the length of his sentence far exceeds the time necessary to protect the public and address Appellant's rehabilitative needs. Appellant concludes the court's imposition of consecutive rather than concurrent sentences for the firearms offenses made the length of his aggregate sentence unreasonable and we should vacate the judgment of sentence. We disagree.

A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. **Commonwealth v. Hunter**, 768 A.2d 1136 (Pa.Super. 2001), *appeal denied*, 568 Pa. 695, 796 A.2d 979 (2001). Prior to reaching the merits of a discretionary sentencing issue:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

What constitutes a substantial question must be evaluated on a case-

by-case basis. *Commonwealth v. Paul*, 925 A.2d 825 (Pa.Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra*, 752 A.2d 910, 913 (Pa.Super. 2000) (internal citation omitted). In other words, an appellant's Rule 2119(f) statement must sufficiently articulate the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002).

This Court has stated:

> Pennsylvania law affords the sentencing court discretion to impose [a] sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion does not raise a substantial question. In fact, this Court has recognized the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa.Super. 2013), *appeal denied*, 621 Pa. 692, 77 A.3d 1258 (2013) (internal citations and quotation marks omitted).

Further,

> "[T]his Court has held on numerous occasions that a claim

- 19 -

of inadequate consideration of mitigating factors [generally] does not raise a substantial question for our review." **_Commonwealth v. Disalvo_**, 70 A.3d 900, 903 (Pa.Super. 2013) (internal citation omitted).

However, "prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court 'failed to consider' or 'failed to adequately consider' sentencing factors has been less than a model of clarity and consistency." **_Commonwealth v. Seagraves_**, 103 A.3d 839, 842 (Pa.Super. 2014) (citing [**_Commonwealth v. Dodge_**, 957 A.2d 1198 (Pa.Super. 2008), _appeal denied_, 602 Pa. 662, 980 A.2d 605 (2009)]). In **_Commonwealth v. Dodge_**, this Court determined an appellant's claim that the sentencing court "disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence" presented a substantial question. **_Dodge, supra_** at 1273.

This Court has also held that "an excessive sentence claim— in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." **_Commonwealth v. Raven_**, 97 A.3d 1244, 1253 (Pa.Super. 2014), _appeal denied_, [629] Pa. [636], 105 A.3d 736 (2014) (_quoting_ **_Commonwealth v. Perry_**, 883 A.2d 599, 602 (Pa.Super. 2005)).

**_Commonwealth v. Caldwell_**, 117 A.3d 763, 769-70 (Pa.Super. 2015).

Instantly, Appellant filed timely notices of appeal _nunc pro tunc_. Appellant preserved his sentencing challenge in a timely filed post-sentence motion and in a Rule 2119(f) statement. **_See Evans, supra_**. To the extent Appellant's claim that his sentence was excessive and the court disregarded his rehabilitative needs raises a substantial question, we will address the appeal on the merits. **_See Caldwell, supra_**; **_Raven, supra_**; **_Dodge, supra_**.

We observe that:

Sentencing is a matter vested in the sound discretion of the

sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super. 2006).

Pursuant to Section 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "[T]he court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id*.

"When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *appeal denied*, 582 Pa. 671, 868 A.2d 1198 (2005), *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id*. Where the sentencing court had the benefit of a pre-sentence investigation [("PSI")], we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988). *See also Commonwealth v. Tirado*, 870 A.2d 362, 368 (Pa.Super. 2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations

- 21 -

along with any mitigating factors). Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Cruz-Centeno*, [668 A.2d 536 (Pa.Super. 1995)], *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).

*Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super. 2010).

Here, the trial court had the benefit of a PSI report and was aware of Appellant's circumstances, age, and personal history. Prior to sentencing, the court noted that it considered the relevant sentencing guidelines, the PSI report, Appellant's and his mother's statement, and the arguments of counsel. In imposing its sentence, the court cited Appellant's prior record score of four based on an extensive criminal history, including drug offenses, simple assault, theft, and firearms offenses. Contrary to Appellant's assertion, the court did not disregard his young age. Rather, the court found that Appellant's excessive and repetitive criminal history despite only being 25 years old necessitated the imposition of a heavier sentence for rehabilitative purposes. Further, the court noted that Appellant's and his mother's statements at sentencing evidenced a failure to take full responsibility and accountability for his actions. Our review of the record confirms the court considered all relevant factors when fashioning Appellant's sentence. Under these circumstances, we see no reason to disrupt the court's sentencing rationale. *See Shugars, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/30/2022